UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

CIVIL ACTION #16-11666-LTS

EDWARD JONES,
   PLAINTIFF,

v.

CAROL HIGGINS-O'BRIEN
LISA MITCHELL
DOUGLAS L. BOWER
MICHAEL DEVINE
JOHN F. CAMELO
SCOTT J. STEEVER
MARTA LEON
NEIL NORCLIFFE
TODD DERBYSHIRE
   DEFENDANTS.

### FIRST AMENDED COMPLAINT AND JURY DEMAND FOR TRIAL

This is an action under Federal and State Civil Rights Act, and the statuatory and common laws of the Commonwealth of Massachusetts. Filed by Edward Jones (herein after "Plaintiff") a state mentally ill prisoner. Seeking damages and injuctive relief under 42 U.S.C.A. § 1983, For Protection And Advocacy For Individuals With Mental Illness ("PAMII") under 42 U.S.C.A. § 10801-10851 etc. seq., 42 U.S.C.A. § 1981, Conspiracy under 42

1

U.S.C.A. § 1985, and Intentional Infliction Of Emotional Distress.

## INTRODUCTION

This complaint alleges the denial of "Plaintiff's" rights to protection from sexual harassment (s); physical and mental harm; adequate mental health care, for serious mental health needs; retaliation; conspiracy to violate Federal and State Laws; all, in violation of the **Eighth** and **Fourteenth Amendments** to the **United States Constitution.** Occuring as a direct result of the Department of Correction "Defendants' failure to protect "Plaintiff" from unwanted sexual advances; and, thier failure to follow Department of Correction **Sexually Abusive Behavior Prevention And Intervention Policy** in reporting, documenting and conducting **"PREA"** investigations. Defendants' failure to follow **Keep-A-Way Orders** and reccommendations (from mental health contractors and staff-persons) to protect "Plaintiff", ultimately resulting in serious physical and psychological injury. Defendants, further, use of crisis lock-up, awaiting action status, and, segregation to intimidate and retaliate against "Plaintiff" for appropriately reporting climate issues; thier violation of Federal and State Laws when they intervened and conspired to stop "Plaintiff" (a victim) of sexual abuse) from contacting a **Sexual Abuse Victim Confidential Support Sevices Hotline** for support services related to sexual harassment(s); In direct violation of **103 DOC 426 etc. seq.; 103 CMR 482 etc. seq. ; 103 CMR 157 etc. seq.; M.G.L. c. 124 § 1; M.G. L. c. 268 § 6A; M.G.L. c. 274 § 2 thru 6 and M.G.L. c. 233 § 20J**

constitute a failure to protect, and, deliberate indifference to "Plaintiff's" serious mental health and physical safety.

1.  This Court has jurisdiction over "Plaintiff's" Federal claims pursuant to **28 U.S.C.A. § 1331** and **1343(a)(3); 28 U.S.C.A. § 2201** and **2202; 5 U.S.C.A. § 702.**

2.  This Court has jurisdiction over "Plaintiff's" State law claims pursuant to **28 U.S.C.A. § 1367** and **M.G.L. c. 127 etc. seq.**

3.  "Plaintiff" has exhausted **all** available administrative remedies regarding the matters described in this complaint.

### THE PARTIES

4.  "Plaintiff", Edward Jones, at all times relevant described in this complaint, is incarcerated at the OLd Colony Correctional Center (herein after "O.C.C.C.") 1 Administration Road, Bridgewater, Massachusetts 02324.

5.  Defendant Carol Higgins-O'Brien (herein after "Defendant O'Brien"), at all times relevant to this complaint, is/was the Commissioner of the Department of Correction with an office located at **50 Maple Street (Suite #3), Milford, Massachusetts 01757.** The Department of Correction incarcerates persons within the Commonwealth of Massachusetts. "Defendant Higgins-O'Brien" is named in her individual and official capacities.

"Defendant Higgins-O'Brien", as Commissioner, is/was responsible for the administration and oversight of the operations of the Department of Correction. Said responsibilities include, in particular but not limited to, the pre-employment screening of prospective management and correction officers, the training of management and correction officers, the preparation and implementation of policies and procedures governing duties and performance of supervisory and non-supervisory personnel and independent contractors, the supervision of supervisory and non-supervisory personnel and independent contractors, the management and maintnance of the Old Colony Correctional Center, and treatment, care and safety of persons incarcerated and/or confined in the Old Colony Correctional Center.

6. Defendant, Lisa Mitchell (herein after "Defendant Mitchell"), at all times relevant to this complaint is/was the Superintendent of the Old Colony Correctional Center, with an office located at **50 Maple Street (Suite #3), Milford Massachusetts 01757.** "Defendant Mitchell" is named in her individual and official capacities.

7. Defendant Douglas L. Bower (herein after "Defendant Bower"), at all times relevant to this complaint is/was the Deputy Superintendent of Operations at the Old Colony Correctional Center. With an office located at **Old Colony Correctional Center, 1 Administration Road, Bridgewater, Massachusetts 02324.** "Defendant Bower" is named in his individual and official capacities.

**"Defendants Mitchell and Bower"**, as Superintendent and Deputy Superintendent, is/was responsible for the administration and oversight of the operations and conditions of treatment and confinement in the Old Colony Correctional Center. Said responsibilities include, in particular but not in limitation, the pre-employment screening of prospective supervisory and non-supervisory personnel, the adoption and implementation of policies, procedures and regulations necessary for the care and safety of incarcerated and confined persons at the Old Colony Correctional Center, the training of supervisory and non-supervisory personnel, the preparation and implementation of policies, procedures and regulations governing the duties and

4

performance of supervisory and non-supervisory personnel and independent contractors, the supervision of supervisory and non-supervisory personnel and independent contractors, the maintnance of Old Colony Correctional Center, and the care, treatment and safety of persons incarcerated and/or confined in the Old Colony Correctional Center.

8. Defendant Michael Devine (herein after "Defendant Devine"), at all times relevant to this complaint, is/was deputy Superintendent and **"PREA" Manager** of Old Colony Correctional Center, with an office located at **Boston Pre-Release Center, 430 Canterbury Street, Roslindale, Massachusetts 02131.**

"Defendant Devine" is named in his individual and official capacities.

**"Defendant Devine"**, as **"PREA" Manager**, is/was responsible for implementing and monitoring the **Sexually Abusive Behavior Prevention And Intervention Policy,** and coordinates the Department of Corrections compliance with the **Prison Rape Elimination Act of 2003.** "Defendant Devine's duties as **"PREA" Manager** include oversight and implementation of the **"PREA"** initiative.

As Deputy Superintendent, "Defendant Devine" is/was responsible for the administration and oversight of the operations and conditions of treatment of persons incarcerated and/or confined at the Old Colony Correctional Center. Said responsibilities include, in particular but not in limitation, the pre-employment screening of prospective supervisory and non-supervisory personnel, the adoption and implementation of policies, procedures and regulations necessary for the safety, care and treatment of persons incarcerated and/or confined at the Old Colony Correctional Center, the training of supervisory and non-supervisory personnel, the preparation and implementation of policies, procedures and regulations governing the duties and performance of supervisory and non-supervisory personnel and independent contrctors, the supervision of supervisory and non-supervisory personnel and independent contractors, and the safety, care and treatment of persons incarcerated and/or confined at the Old Colony Correctional Center.

9. Defendant, John F. Camelo (herein after "Defendant Camelo"), whos address is unknown to the "Plaintiff", was at all times relevant to this complaint, a correctional officer/captain at Old Colony Correctional Center. At all times material to this

complaint, "Defendant Camelo" was acting within the scope of his employment and under color of state law. he is sued in his individual and official capacity as a correctional officer/captain of **Old Colony Correctional Center, 1 Administration Road, Bridgewater, Massachusetts 02324.**

10. Defendant, Scott J. Steever (herein after "Defendant Steever"), whos true address is unknown to the "Plaintiff", was at all times relevant to this complaint, a correctional officer at Old Colony Correctional Center. at all times material to this complaint, "Defendant Steever" was acting within the scope of his employment and under color of state law. He is sued in his individual and official capacity as a correctional officer of **Old Colony Correctional Center, 1 Administration Road, Bridgewater, Massachusetts 02324.**

11. Defendant, Marta Leon (herein after "Defendant Leon"), whose true address is unknown to the "Plaintiff", was at all times relevant to this complaint Records Manager at Old Colony Correctional Center. At all times material to this complaint, "Defendant Leon" was acting within the scope of her employment and under statelaw. She is sued in her individual and official capacity as Records Manager of **Old Colony Correctional Center, 1 Administration Road, Bridgewater, Massachusetts 02324.**

12. Defendant Neil Norcliffe (herein after "Defendant Norcliffe"), is a supervising medical/mental health director, providing medical/mental health services to patients/inmates/prisoners at the Old Colony Correctional Center, with an office located at **Old Colony Correctional Center, 1 Administration Road,**

**Bridgewater, Massachusetts 02324.** "Defendant Norcliffe" is sued in his individual and official capacity.

13. Defendant Todd Derbyshire (herein after "Defendant Derbyshire"), is a mental health clinician providing mental health services to patients/inmate/prisoners at Old Colony Correctional Center, with an office located at **Old Colony Correctional Center, 1 Administration Road, Bridgewater, Massachusetts 02324.** "Defendant Derbyshire" is sued in his individual and official capacity.

At all times of the events described in this complaint, "Defendants Norcliffe and Derbyshire" were employees of Massachusetts Partnership For Correctional Health, a private corporation under contract with "Defendant Higgins-O'Brien" in accordance with **M.G.L. c. 124 § 1(m)** to provide adequate mental health care to needed state prisoners within the "DOC" in accordance with **103 CMR 761.07; 103 DOC 650.01 etc. seq.; 103 DOC630; and 103 DOC 207.04(2); M.G.L. c. 124 § 1; M.G.L. c. 30A § 1-A-8; M.G.L. c. 127 § 38E - 38H; M.G.L. C. 124 § 1(c); M.G.L. c. 30 § 36(a);** ACA standards: 3-4336, 4337, 4342, 4349, 4362, 4367, 4368, 4369; Prison Rape Elimination Act of 2003 Public Law 108-79 ("PREA"); **103 DOC 519** and **NCCHC standards.**

7

**FACTS**

14. On approximately March 25, 2013, "Plaintiff", Edward Jones (herein after "Plaintiff"), was sentenced to serve a seven (7) year term of incarceration, with a concurrent sentence of ten (10) to twelve (12) years; said sentences was imposed to be served with the Massachusetts Department of Correction, in accordance to/with state and federal laws.

15. On June 13, 2013, due to a history of mental illness, Department of Correction (herein after "DOC") officials at MCI-Cedar Junction classified "Plaintiff" to the mental health Residential Treatment Unit (herein after "RTU") at Old Colony Correctional Center (herein after "O.C.C.C.").

16. On or about June 2015, "DOC" officials classified, and placed, inmate Vernon Thompson (herein after "inmate Thompson") in the mental health "RTU" at "O.C.C.C.".

17. Soon after "inmate Thompson's arrival to the "RTU" in June 2015, "Plaintiff" began reporting to mental health "RTU" clinicians of "Plaintiff" being sexually targeted and harassed by "inmate Thompson"; whom "Defendant Captain Camelo" ordered be housed next cell to "Plaintiff".

18. On or about July 2015 thru August 2015, "Defendant Camelo" was notified by "RTU" clinicians of received complaints from "Plaintiff" involving alligations of sexual harassment(s) towards "Plaintiff", and, "Defendant Camelo" failed to protect "Plaintiff" from sexual harassment(s) and/or physical assault.

19. On or about July 2015 thru August 2015, "Defendant Devine" was notified by "RTU" clinicians of received complaints from "Plaintiff" involving alligations of sexual harassment(s) towards "Plaintiff", and, "Defendant Devine" failed to protect "Plaintiff" from sexual harassment(s) and/or physical assault.

20. From June 2015 thru October 2015, the sexual harassment(s) continued inspite of "Defendants" having been notified.

21. "Defendant Camelo" failed on several occasions to emplement policy procedures, set forth in Department of Correction's **Sexually Abusive Behavior Prevention And Intervention Policy "103 DOC 519"**, upon receiving staff reported alligations of sexual harassment(s) towards "Plaintiff".

22. "Defendant Devine", being "PREA" Manager, failed on several occaisions to emplement policy procedures, set forth in **Sexually Abusive Behavior Prevention And Intervention Policy**

"**103 DOC 519**", upon receiving staff reported alligations of sexual harassment(s) towards "Plaintiff".

23. On or about September 24, 2015, "Defendant Camelo" retaliated against "Plaintiff", by subjecting "Plaitniff" to inappropriate Awaiting Action Status ("A.A") lock-up absent any disciplinary infractions in an attempt to stop "Plaintiff" from reporting alligations of sexual harassment(s) and climate issues with "inmate Thompson".

24. On or about September 24, 2015 and September 25, 2015 (exhibit #11), "Plaintiff" personally (via corresspondence) reported to Superintendent, Lisa Mitchell (herein after "Defendant Mitchell"), alligations of sexual harassment(s) towards "Plaintiff", and, "Defendant Mitchell" failed to protect "Plaintiff" from sexual harassment(s) and/or physical assault.

25. On or about September 24, 2015 and September 25, 2015. (exhibit #11), "Plaintiff" (via corresspondence) informed "Defendant Mitchell" of a serious risk of harm of violence and psychological trauma, and, "Defendant Mitchell" disregarded such risks when she instructed "inmate Thompson" be released in the "O.C.C.C." general population with "Plaintiff"

26. On or about September 24, 2015, "Defendant Mitchell" disregarded an August 19, 2015 **Keep-A-Way Order**, issued by Institutional Perimiter Security ("IPS") instructing "inmate Thompson" be kept away from "Plaintiff", when she instructed "inmate Thompson" be released in the general "O.C.C.C." population with "Plaintiff".

27. "Defendant Mitchell" disregarded reccommendation from mental health "RTU" staff clinicians that "inmate Thompson and "Plaintiff" should be separated by institutions, when she instructed "inmate Thompson" be released in the "O.C.C.C." general population with "Plaintiff".

28. On October 24, 2015, "Plaintiff" was eventually assaulted and sexually harassed by "inmate Thompson" in a chow hall full of other prisoners and correctional staff.

29. Such physical assault consisted of "Plaintiff" being stabbed in the right hand with a folk, receiving stitches, resulting in nerve damage to "Plaintiff's" right palm for which pain medication and months of painful physical therapy was prescribed.

30. On or about August 26, 2015, "Defendant Camelo" in violation of **"103 DOC 519"** initiated an undocumented "PREA" investigation against "Plaintiff", the basis of knowingly

false alligations of "PREA" lodged against "Plaintiff"; all steps of such investigation was not documented as required by policy.

31. On or about December 3, 2015, "Defendant Camelo" in violation of **"103 DOC 519"** initiated a second undocumented "PREA" investigation against "Plaintiff", again, the basis of knowingly false alligations of "PREA" lodged against "Plaintiff", all steps of such investigation was not documented as required by policy.

32. Both August 26, 2015 and December 3, 2015 investigations, separately, subjected "Plaitniff" to crudely indecent, vulgar, false and deflamatory questions concerning incidents of sex between "Plaitniff" and another prisoner.

33. Both August 26, 2015 and December 3, 2015 investigations, separately, subjected "Plaintiff" to interrogations and forced medical and psychological screenings for suspected sexual abuse, which traumatized "Plaintiff" being a victim of sexual abuse as a child.

34. "Plaintiff" later discovered that the reasons "Defendants" were going through any means to keep "inmate Thompson at "O.C.C.C.", was because "inmate Thopmson" could not be housed at any other "DOC" institutions due to enemy situations with other prisoners.

35. On or about December 3, 2015, psychological screening clinician, Todd Derbyshire (herein after "Defendant Derbyshire"), subjected "Plaintiff" to inappropriate and non-emergency placement in forced seclusion when "Plaintiff" denied false alligations of "PREA" lodged against "Plaintiff".

36. On or about December 3, 2015, "Defendant Camelo" personally instructed correctional officer, Scott J. Steever (herein after "Defendant Steever") to stop "Plaintiff" from calling an approved Department of Correction **Sexual Abuse Confidential Support Services Hotline** (Exhibit #29).

37. On or about December 3, 2015, "Defendant Steever" violated Department of Correction rules, regulations, guidelines and/or procedures, as well as "Plaintiff's" Consttutional Rights; when he failed to allow "Plaintiff" to call an approved Department of Correction **Sexual Abuse Confidential Support Services Hotline** (Exhibit #29).

38. On or about August 26, 2015 and December 3, 2013 "Defendant Mitchell" failed to follow "general procedures" and policy set forth in **"103 DOC 519"**, upon receiving false alligations of "PREA" lodged against "Plaintiff".

39. On or about August 26, 2015 and December 3, 2015, "Defendant Devine", as "PREA" Manager, failed to follow procedures and policy set forth in **103 DOC 519"**, upon receiving false alligations of "PREA" lodged against "PLaintiff".

40. On or about September 1, 2015, Director of Security, Douglas L. Bower, Jr. (herein after "Defendant Bower") entered into a collusion with "Defendant Mitchell" to cover up an August 26, 2015 undocumented "PREA" investigation lodged against "Plaintiff" (Exhibit #1).

41. On or about December 4, 2015, "Defendant Mitchell" and "Defendant Devine" entered into a collusion with "O.C.C.C." Records Manager, Marta Leon (herein after "Defendant Leon") and removed all documents from "Plaintiff's" records/files including Inmate Management System (IMS) relating and pertaining to August 26, 2015 undocumented "PREA" investigation lodged against "Plaintiff".

42. On or about December 2015, prior to allowing "Plaintiff" to inspect "Plaintiff's" institutional records via CORI, "Defendant Leon" removed all records, reports, waivers, case numbers, referrals, documents, including names/ identity of staff-persons or contractors or volunteers who wrote or filed incident reports relating and

pertaining to August 26, 2015 undocumented "PREA" investigation lodged against "Plaintiff".

43. Commissioner of Correction, Carol Higgins-O'Brien (herein after "Defendant Higgins-O'Brien" was notified via letter by "Plaintiff" of "Plaintiff" being sexually harassed and retaliated against, and, "Defendant Higgins-O'Brien" failed to protect "Plaintiff" from a situation that eventually resulted in physical harm and sexual harassment(s) towards "Plaintiff".

44. Under Title 11 of the "Americans With Disabilities Act", "Plaintiff" is a qualified individual with a mental disability resulting from a history of sexual and physical abuse asa a child (Exhibits #54, #62 thru 70, #90, #91).

45. On or about early November 2015, Mental Health Director, Neil Norcliffe (herein after "Defendant Norcliffe") was notified by "RTU" clinicians of "Plaintiff" suffering from nightmares consisting of uncontrolled nocturnal ejaculations the cause of trauma arising from undocumented "PREA" investigations and sexual harassment(s).

46. On or about early November 2015, "Defendant Norcliffe" failed to acknowledge or respond to a request from "RTU" clinicians for a special accommodations of a single cell order for "Plaintiff".

47. On or about November 27, 2015, "Defendant Norcliffe" retaliated against "Plaintiff" for initiating a 5:30 A.M crisis situation, by subjecting "Plaintiff" to six (6) days of inappropriate and non-emergency seclusion in a mental health watch cell.

48. On or about November 27, 2015, "Defendant Norcliffe" discriminated against "Plaintiff" by failing to provide "Plaintiff" an entitled to treatment of a special accomodations of a single cell order and subjecting "Plaintiff" to six (6) days of inappropriate and non-emergency seclusion in a mental health watch cell.

49. The actions and/or inactions of all "Defendants", as set forth in paragraphs #17 thru 48, failed to ensure the rights of "Plaintiff" a person with a mental illness was advocated and protected.

50. The actions and/or inactions of all "Defendants", as set forth in paragraphs #17 thru 49 above, caused "Plaintiff" psychological traumatization, emotional distress, uncomfortable traumatic memories, reoccurances of flashbacks, increased symptoms of Post Traumatic Stress Disorder (herein after PTSD) and uncontrollable nocturnal ejaculations (Exhibits #54, #s62 thru 70, #90, #91).

51. The actions and/or inactions of all "Defendants", as set forth in paragraphs #17 thru 29 above, caused "Plaintiff" physical harm that resulted in pain, months of physical therapy, improper use of right-hand and psychological damage.

### CLAIMS FOR RELIEF

**COUNT I:    42 U.S.C. § 1983 VIOLATION OF EIGHTH AMENDMENTS TO THE UNITED STATES CONSTITUTION:**

The "Defendants" collectively and individually knew or should have known that they were acting with deliberate indifference when they, failed to protect "Plaintiff" from a serious risk of physical and psychological harm, and, personally caused psychological harm.

**COUNT II:    42 U.S.C. § 1983 and 1981 VIOLATION OF FOURTEENTH AMENDMENT AND DUE PROCESS:**

The "Defendants" collectively and individually knew or should have known that thier actions were depriving "Plaintiff" of Constitutional rights to due process of law and protected interests.

**COUNT III:** 42 U.S.C. §§ 12131 etc. seq. **VIOLATION OF THE AMERICANS WITH DISABILITIES ACT ("ACT"):**

The "Defendants" collectively and individually knew or should have known that thier actions discriminated against "Plaintiff" and excluded "Plaintiff" of services "Plaintiff" was entitled to as a person with a disability.

**COUNT IV:** 42 U.S.C. § 1985 **CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS:**

The "Defendants" collectively and individually knew or should have known that they were entering into a conspiracy that would harm "Plaintiff" and violate "Plaintiff's" Constitutional rights.

**COUNT V:** **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ("IIED"):**

The "Defendants" collectively and individually knew or should have known that thier actions were intentional, extreme and outrageous, and would cause "Plaintiff" emotional distress, and, that such emotional distress would be severe.

**COUNT VI:** **VIOLATION ARTICLE 26 OF THE MASSACHUSETTS DECLARATION OF RIGHTS:**

The "Defendants" collectively and individually knew or should

have known that thier actions were violating "Plaintiff's" rights to be free fron cruel or unusual punishment.

### **PRAYER FOR RELIEF**

Wherefore, the "Plaintiff", Edward Jones prays for judgement against "Defendants" jointly and severally, as follows:

1. An award of compensatory damages, allowed by law, an amount the Court may deem just and proper.

2. An award of punitive damages, allowed by law, an amount the Court may deem just and proper.

3. Attorney fees, filing fees, and, other Court costs and expenses; including an award of prejudgement interests.

4. Ordr a judgement that **all** "PREA" related information and documentation be removed from "Plaintiff's" "DOC"/institutional records and files; including "DOC" Inmate Management System.

5. Enter a preliminary injuction and permanent injuction ordering "Defendants", thier successors, agents, employees and all persons acting in concert with them, to continue prescribing and/or renewing single bunk cell order for as long as "Plaintiff" suffers serious mental health illness of "PTSD"

consisting of uncontrolled nocturnal ejaculation episodes pursuant to **42 U.S.C. § 12131** and **§ 10801**.

6. Declare "Defendants" actions violated "Plaintiff's" rights to be free from cruel and/or unusual punishment under the **U.S Constitution** and **Massachusetts Declaration Of Rights**.

7. Order such additional relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Edward Jones demands a trial by jury on all counts.

Signed under the pains and penalties of perjury this **11th** day of **November 2016.** Signed, _Edward James_.

_Edward James_
Mr. Edward Jones (W-102323)
O.C.C.C.
1 Administration Road
Bridgewater, Mass 02324