# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

EDWARD JONES,
             Plaintiff,

v.                                                                                 CIVIL ACTION NO. 16-11666-LTS

CAROL HIGGINS-O'BRIEN, LISA MITCHELL,
DOUGLAS BOWER, MICHAEL DEVINE,
JOHN F. CAMELO, SCOTT J. STEEVER,
MARTA LEON, NEAL NORCLIFFE, and
TODD DERBYSHIRE,

             Defendants.

## MEMORANDUM AND ORDER

SOROKIN, D.J.

## I.    Introduction

On August 15, 2016, pro se prisoner plaintiff Edward Jones filed a voluminous complaint against three groups of defendants: (1) the Commonwealth of Massachusetts, Department of Corrections ("DOC"), the Executive Office of Public Safety; (2) Daniel Bennett, Carol Higgins-O'Brien, Thomas Turco, Christopher Fallon, Lisa Mitchell, Douglas Bower, Michael Devine, John F. Camelo, Scott Steever, Hank LaValley, Marta Leon; and, (3) the Massachusetts Partnership for Correctional Health, Neal Norcliffe and Todd Derbyshire. ECF No. 1. The 96-page complaint consisted of 273 paragraphs and nine counts. Attached to the complaint were 142 pages of exhibits.

On October 12, 2016, the Court ordered Jones to file an amended complaint. ECF No. 9. On November 18, 2016, Jones timely filed an Amended Complaint, bringing six counts against defendants Higgins-O'Brien, Mitchell, Bower, Devine, Camelo, Steever, Leon, Norcliffe, and Derbyshire. ECF No. 17 (referenced herein as "Amended Compl.").

Before the Court are defendant Higgins-O'Brien's motion to dismiss for lack of service of process (ECF No. 56), defendants Mitchell, Bower, Devine, Camelo, Steever, and Leon's ("the DOC Defendants") motion to dismiss for failure to state a claim upon which relief may be granted (ECF No. 60), and defendants Norcliffe and Derbyshire's (the "MPCH Defendants") motion to dismiss for failure to state a claim upon which relief may be granted (ECF No. 50). Jones opposed the motions. ECF Nos. 57, 58 and 67. For the reasons stated below, the DOC Defendants' motion is hereby allowed in part and denied in part, MPCH Defendants' motion to dismiss is hereby allowed, and Higgins-O'Brien's motion to dismiss is denied as moot. The action will be stayed pending the Court's attempt to locate pro bono counsel for Jones on the surviving claims.

## II.  Background

On June 13, 2013, Jones, a mentally ill state prisoner suffering from Post-Traumatic Stress Disorder, was designated to the Residential Treatment Unit ("RTU") at Old Colony Correctional Center ("OCCC"). Amended Compl. ¶¶14-17; see Exhibit 54, ECF 1-2, p. 114, ref'd at Amend Compl. ¶¶44, 50. At or around that time, another inmate, Vernon Thompson, was housed in a cell next to Jones. Amended Compl. ¶17. Thompson sexually harassed and targeted Jones. Amended Compl. ¶17. Soon after Thompson's arrival to RTU in June 2015, Jones began reporting the harassment to RTU clinicians. Id. From July 2015 through August 2015, Correctional Officer Captain John Camelo and Deputy Superintendent of Operations Michael Devine were notified by RTU mental health clinicians about Jones' reports of harassment, but they failed to prevent the sexual harassment. Amended Compl. ¶¶18-19. For example, Camelo and Devine failed to follow procedures upon receiving these reports. Amended Compl. ¶¶21-22. Jones was later physically assaulted. Amended Compl. ¶¶18-19. More broadly, Jones claims in a conclusory manner that

2

"from June 2015 thru (sic) October 2015, the sexual harassment(s) continued inspite (sic) of "Defendants" having been notified." Amended Compl. ¶20.

On August 19, 2015, Inner Perimeter Security issued a "keep-away" order that Thompson be kept away from Jones. Amend Compl. ¶26. On August 26, 2015, Thompson purportedly made false allegations that Jones had been involved in a sexual incident, otherwise known as a PREA incident.[1] Amend. Compl. ¶ 30, Exhibits 64 ECF 1-2, p. 124, ref'd at Amend Compl. ¶¶44, 50. Jones concludes, without a plausible factual basis, that Camelo knew the claims were false yet initiated the PREA investigation. As part of the investigation of the PREA incident, Jones was subjected to apparently routine medical and psychological screenings for suspected sexual abuse, but which nevertheless purportedly traumatized Jones because he was a victim of sexual abuse as a child. Amended Compl. ¶33.

On September 24, 2015, Jones claims that defendant Camelo "retaliated" against Jones by placing him in "Awaiting Action" status "absent any disciplinary infractions", in an attempt to stop Jones from reporting harassment and his issues with Thompson. Amended Compl. ¶23. Contemporaneous records submitted by Jones contradict this conclusory allegation. On September 24, 2015 and September 25, 2015, Jones reported to defendant OCCC Superintendent Lisa Mitchell allegations of sexual harassment and his dissatisfaction with being placed on Awaiting Action status. Amended Compl. ¶24. In a September 25, 2015 letter, Jones wrote to Mitchell:

> As a result of myself, and, at least five (5) other prisoners' addressing our uncomfortability and fears concerns about Vernon

---

[1] PREA is an acronym for the Prisoner Rape Elimination Act. 34 U.S.C. §30301 et. seq. (formerly 42 U.S.C. § 15601 *et seq.*). PREA does not provide a private right of action. See Morissette v. Superintendent of MCI Cedar Junction, No. CIV.A. 14-10246-DJC, 2014 WL 3896722, at *3 (D. Mass. Aug. 7, 2014).

3

> Thompson to RTU mental health staff. Myself <u>only</u>, was escorted, out of the RTU office to new man unit questioned by IPS Sgts., and then placed on awaiting action status. Where I now remain --because I refuse to, and fail to, allow inmate Vernon Thompson to victimize, traumatize, harass, and abuse me verbally any longer…Instead of stopping Vernon Thompson from sexually victimizing, abusing, traumatizing and harassing myself and others [,] [c]orrectional staff at this facility/site…failed to issue …disciplinary reports, and or sanctions … and hold him accountable for his unlawful actions…Refusing to hold inmate Vernon Thompson accountable…makes you complicit in what…[he]… is doing. …[I]t is clear that he is not getting any better and should be sent or classified to the Treatment Center for help. Because it is clear that his intention and mind-set is to victimize again sexually. All I want is to be able to complete my time in peace. Get the treatment I need without being subjected to victimization over and over again.

Exhibit 11, ECF 1-2, pp. 27-29, ref'd in Amend. Compl. ¶24. In response, Mitchell sent a letter to Jones acknowledging receipt of the letter and September 24, 2015 grievance. Exhibit 11, ECF No. 1-2, p. 26, ref's at Amend Compl. ¶ 24. Although Jones was perhaps singled out, there is nothing in his grievance indicating that Camelo segregated Jones to silence him. Indeed, Jones also alleges, in contradiction to a retaliatory conspiracy, that the reason DOC personnel "were going through any means to keep inmate Thompson at O.C.C.C., was because inmate Thompson could not be housed at any other DOC institutions due to enemy situations with other prisoners." Amended Compl. ¶34 (quotations omitted).

A September 24, 2015, MPCH mental health progress note, purportedly by Daniel P. Bradley, MSW LICSCW, also captures Jones' reaction:

> Mr. Jones has an open mental health case. [T]hough currently on AA status, client was seen in HSU as a MH Check-in secondary to his concerns this afternoon regarding being placed on AA status for his response to the return of another inmate to his housing unit. The inmate in question had accused Mr. Jones of inappropriate behavior, and Mr. Jones was appropriately reporting frustration and anger

4

> (within appropriate limits) with climate issues and with being placed on AA as a result. Inmate used this contact to express his concerns appropriately regarding his frustration with apparent false accusations, feeling that security staff has not taken his concerns seriously enough.

Exhibit 64, ECF No. 1-2, p. 124, ref'd in Amend. Compl. ¶44. There is no mention of retaliation against Jones.

On September 25, 2015, Jones was again seen by MPCH staff. In an MPCH mental health progress note, Vanessa Martino-Fleming, LMHC, documented her concerns for Jones' safety and her voicing those concerns to DOC:

> Inmate…was extremely frustrated with the events that occurred yesterday and with mental health and the DOC. Writer acknowledged that the DOC's decision to place other RTU inmate that he had a previous issue with back on the unit was a stressful situation[] for him. Writer reiterated that writer and all other RTU staff had made it abundantly clear to the DOC that there were numerous concerns with placing this other inmate back on the unit. Writer recognizes that inmate had experienced some increased symptoms related to previous incidents as well as with current DOC decision. ..Writer reiterated that mental health had made their clinical opinion clear to the DOC that this other RTU inmate's safety was at risk. Writer praised the inmate for coming over to the RTU yesterday instead of acting on his angry feelings.

Exhibit 65, ECF No. 1-2, p. 125, ref'd in Amend. Compl. ¶44. Again, there is no mention of retaliation in the progress note.

Jones claims that Mitchell failed to protect Jones from sexual harassment and/or assault. Amended Compl. ¶24. Specifically, Jones claims that Mitchell disregarded the serious risk to Jones by ignoring an August 19, 2015 "keep-away" order by releasing Thompson to OCCC general population with Jones, and ignoring recommendation by mental health clinicians that Jones be separated from Thompson by institution. Amended Compl. ¶¶26-27.

On October 20, 2015, Jones was again seen by Martino-Fleming. Her progress note reflects concern over Jones' and the other inmate's proximity--concern that four days later would appear prescient:

> [Jones] reported that he still had ongoing frustrations with alleged PREA allegation and other inmate being moved to A-2…It should be noted that this writer and the RTU mental health team have been expressing their concerns for this inmate and other inmate's safety. This writer had expressed on previous case conference her concerns with not separating inmates by institution.

Exhibit 69, ECF 1-2, p.126, ref'd in Amend. Compl. ¶44.

On October 24, 2015, Jones was assaulted and sexually harassed by Thompson in the dining hall. Amended Compl. ¶28. Jones alleges that he was stabbed with a fork, resulting in a laceration, nerve damage and pain. Id.

In early November 2015, Mental Health Director Neal Norcliffe was notified by RTU mental health clinicians of Jones' mental and physical symptoms as a result of issues from the "undocumented" PREA investigation and sexual harassment. Amended Compl. ¶45-46. MPCH records submitted by Jones indicate that he suffers from PTSD and that symptoms increased coinciding with the interactions with inmate Thompson and "undocumented" PREA incidents. MPCH Mental Health Treatment Plan Review, Exhibit 54, ECF No. 1-2, pp. 114-117, ref'd in Amended Compl. ¶¶44, 50. Norcliffe failed to acknowledge or respond to a request from mental health clinicians for a special accommodation of a single cell order. Amended Compl. ¶46. On November 27, 2015, Jones initiated a "crisis call" because of symptoms relating to his mental condition. Amended Compl. ¶¶45, 47. Norcliffe purportedly "retaliated" against Jones for initiating the crisis call, by subjecting Jones to purportedly "inappropriate and non-emergency" seclusion in a mental health watch cell. Amended Compl. ¶47.

6

On December 3, 2015, Jones claims that Camelo initiated a second "undocumented" PREA investigation based upon false allegations. Amended Compl. ¶ 32. As part of the investigation, Jones was subjected to medical and psychological screenings for suspected sexual abuse which traumatized the Jones, because he was a victim of sexual abuse as a child. Amended Compl. ¶33. As part of the PREA screening, RTU mental health clinician Todd Derbyshire subjected Jones to a purportedly inappropriate and non-emergency seclusion when Jones denied the PREA allegations. Amended Compl. ¶35.

That same day, December 3, 2015, Jones alleges that Camelo instructed correctional officer Scott Steever to prevent Jones from calling an approved Department of Correction Sexual Abuse Confidential Hotline. Amended Compl.¶36. Steever followed this instruction and prevented Jones from calling an alleged approved telephone number. Amended Compl.¶37.

Throughout this period, Jones surmises that a conspiracy and cover up occurred. First, he alleges that on September 1, 2015, OCCC Director of Security Douglas L. Bower colluded with OCCC Superintendent Lisa Mitchell to cover up what Jones describes as the August 26, 2015 "undocumented" PREA investigation. Amended Compl. ¶40. Second, he alleges that on December 4, 2015, Mitchell and Devine purportedly colluded with OCCC Records Manager Marta Leon and removed all documents concerning the August 26, 2015 "undocumented" PREA investigation. Amended Compl. ¶¶41-42. There is no supporting factual basis for these conclusory allegations in the Amended Complaint.

### III. Discussion

#### A. The Standard

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the amended complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Court "must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiff[ ]." Watterson v. Page, 987 F.2d 1, 3 (1st Cir.1993). "[F]actual allegations" must be separated from "conclusory statements in order to analyze whether the former, if taken as true, set forth a plausible, not merely a conceivable, case for relief." Juarez v. Select Portfolio Servicing, Inc., 708 F.3d 269, 276 (1st Cir.2013) (internal quotations omitted).

While the Court typically "may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment," Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir.2001), there is an exception "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Watterson, 987 F.2d at 3. Here, the Court expressly does not convert the motions to dismiss into motions for summary judgment.

#### B. Claims Against Higgins-O'Brien

All claims against defendant Higgins-O'Brien are DISMISSED sua sponte pursuant to 28 U.S.C. §1915A, and her motion to dismiss for lack of service is therefore DENIED as MOOT. The only allegation in the amended complaint is that Jones notified Higgins-O'Brien by letter of

8

the harassment and retaliation and that she failed to protect him from a situation that eventually resulted in physical harm and sexual harassment. Amended Compl. ¶43. The allegation is conclusory and does not state a claim. Indeed, Jones allegations plead possibilities, and not a plausible claim upon which relief may be granted. Accordingly, all counts against Higgins-O'Brien are DISMISSED, and her motion to dismiss for failure to serve is DENIED as MOOT.

### C. DOC Defendants' and MPCH Defendants Motion to Dismiss

#### 1. Count 1 – 42 U.S.C. §1983 - Eighth Amendment Claims

##### a. Failure to Protect - Mitchell, Devine and Camelo

"Under the Eighth Amendment, 'prison officials have a duty to protect prisoners from violence at the hands of other prisoners.'" Lakin v. Barnhart, 758 F.3d 66, 70 (1st Cir. 2014) (citing Farmer v. Brennan, 511 U.S. 825, 833 (1994)). "Not every injury suffered by one prisoner at the hands of another, however, translates into constitutional liability." Id. (citation and quotations omitted). "Instead, a prison official violates an inmate's Eighth Amendment right against cruel and unusual punishment based on a failure to prevent harm to the inmate only under two circumstances: the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm, and the prison official must have acted, or failed to act, with deliberate indifference to inmate health or safety. Id. (citation and quotations omitted). A "substantial" risk is one that is "objectively intolerable," Farmer, 511 U.S. at 846. "Deliberate indifference" is more than mere negligence, and likened to "criminal recklessness." Burrell v. Hampshire Cty, 307 F.3d 1, 8 (1st Cir. 2002). Here, Jones' allegations are sufficient to plead a failure to protect claim against defendants Mitchell, Devine and Camelo. Jones alleges that defendants Mitchell, Devine and Camelo were aware of a substantial risk of serious harm to Jones from a specific other inmate in the form of his constant

sexual harassment, that RTU medical staff notified Camelo and Devine of the complaints regarding sexual harassment, and that each defendant ignored those complaints. RTU mental health staff expressed their safety concerns to Devine and Camelo. Jones further alleges that he notified defendant Mitchell of the harassment, and that in turn she ignored the threat when she released the inmate into population with Jones. As a result, Jones alleges that he was assaulted and injured. Moreover, as to Camelo, allegations that Camelo subjected Jones to unnecessary PREA investigations that exacerbated his PTSD are sufficient for pleading purposes, and survive DOC Defendants' motion to dismiss.

### b. Deliberate Indifference to Medical Needs – Norcliffe and Derbyshire

In order to state a constitutional claim for the denial of adequate medical care under the Eighth Amendment, an inmate must allege "acts or omissions ... sufficiently harmful to evidence deliberate indifference to serious medical needs." Leavitt v. Corr. Med. Servs., 645 F.3d 484, 497 (1st Cir. 2011). A serious medical need is "one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Kosilek v. Spencer, 774 F.3d 63, 82 (1st Cir. 2014)(citations and quotation omitted).

Here, Jones alleges that he is mentally ill and suffers from PTSD as a result of being sexually victimized as a child. He is under the care of DOC/MPCH mental health personnel. Jones alleges that his mental condition deteriorated to the point where mental health staff requested a single-cell status for Jones. Jones alleges that Norcliffe failed to acknowledge and ignored the request for a single cell, and Norcliffe retaliated against him after an incident occurred relative to this issue. The intentional denial of a medically required cell could be deliberate indifference to

the health and safety of an inmate under the Eighth Amendment. Villery v. Beard, No. 115CV00987DADBAMPC, 2016 WL 8730770, at *2 (E.D. Cal. Apr. 8, 2016); see Cryer v. Spencer, No. CIV.A. 11-10654-DJC, 2012 WL 892883, at *5 (D. Mass. Mar. 15, 2012)(denial of single bunk cell status stated Eighth Amendment claim); Restucci v. Clarke, 669 F. Supp. 2d 150, 156 (D. Mass. 2009). However, Jones' allegations are not plausibly pleaded to allege deliberate indifference. Rather, the reasonable inference of the allegations and documents referenced in the amended complaint, is a mere temporal gap between an internal request and provision of the cell. While Jones asserts the short delay was intentional, the assertions are entirely speculative.[2]

Jones' allegations against Norcliffe that he placed Jones on a six day mental health watch in "retaliation" to Jones' request for a mental health crisis, and later against Derbyshire for placing Jones on a crisis watch placement fail to state an Eighth Amendment claim fare no better. Indeed, "[t]o the extent it is [Jones'] opinion that he should not have been placed on mental health status…, this disagreement with the mental health workers…does not rise to the level of medical indifference in violation of the Eighth Amendment." Morales v. Saba, No. CV 15-10732-RGS, 2016 WL 593493, at *11 (D. Mass. Feb. 12, 2016), appeal dismissed (Sept. 9, 2016)(citing Soneeya v. Spencer, 851 F. Supp. 2d 228, 242 (D. Mass. 2012)). Moreover, the allegations do not

---

[2] While DOC may be correct that 42 U.S.C. § 1997e(e) may be a bar to a compensatory damages claims in the absence of physical injury, but not for punitive or nominal damages, and injunctive relief. Because of the unsettled state of the law, the claims survive the motions to dismiss. See Hudson v. MacEachern, 94 F. Supp. 3d 59, 67 (D. Mass. 2015)(citing Kuperman v. Wrenn, 645 F.3d 69, 73 (1st Cir. 2011)); Peters v. Azzara, No. 15-CV-025-LM, 2017 WL 4118388, at *5 (D.N.H. Aug. 4, 2017), report and recommendation adopted sub nom. Peters v. NH Dep't of Corr., Comm'r, No. 15-CV-025-LM, 2017 WL 4119160 (D.N.H. Sept. 14, 2017)(citing Kuperman v. Wrenn, 645 F.3d 69, 73 (1st Cir. 2011)).

show how placing Jones on crisis watch had any detriment to his mental health needs or how it was deliberately indifferent thereto.

Accordingly, as to Count 1, the DOC Defendants' Motion is ALLOWED as to defendants Bower, Steever and Leon, and DENIED as to defendants Mitchell, Devine and Camelo; MPCH Defendants' Motion is ALLOWED as to defendants Derbyshire and Norcliffe.

### 2. Count 2 - Fourteenth Amendment Claims

In his opposition to the DOC Defendants' Motion to Dismiss, Jones argues his Due Process claim relates to his inability to use the telephone to contact a sexual abuse hotline. An inmate is entitled to due process protections only when an existing liberty or property interest is at stake. Sandin v. Conner, 515 U.S. 472, 484 (1995). A liberty interest is infringed only if the punishment inflicted upon the inmate imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. As this Court has noted, albeit in a different context, "[p]risoners have no *per se* constitutional right to use a telephone." Sanchez v. Global Tel Link, et al., 2015 WL 8215880 (D. Mass. Dec. 8, 2015)(quoting United States v. Footman, 215 F.3d 145, 155 (1st Cir. 2000)). Here, Jones alleges that on a single occasion he was refused access to call a certain mental health hotline number on a telephone, and the documents referenced in the amended complaint instead demonstrate plaintiff was provided a different number to call. Even if he had a liberty interest, a point on which this Court need not decide, this single incident from a Due Process perspective does not plausibly allege an "atypical and significant hardship" on Jones in relation to the ordinary incidents of prison life.

As to the MPCH Defendants, Jones' claims that his Due Process rights were violated under the Fourteenth Amendment when (1) he was placed by Norcliffe in "inappropriate and non-

emergency" placement for six days after having a mental health crisis, and (2) a single conclusory allegation that Derbyshire subjected him to inappropriate and non-emergency segregation when Jones denied being involved in a PREA incident fail. "Placement on awaiting action status or administrative segregation does not rise to the level of an atypical and significant hardship." Morales v. Saba, No. CV 15-10732-RGS, 2016 WL 593493, at *9 (D. Mass. Feb. 12, 2016), appeal dismissed (Sept. 9, 2016). "Rather, this is the type of confinement that inmates may receive at some point during their incarceration." Id.; Hudson v. MacEachern, 94 F. Supp. 3d 59, 69 and n.5 (D. Mass. 2015)(dismissing Fourteenth Amendment claim for placement in Special Management Unit where no significant time alleged under procedural and substantive Due Process considerations).

Accordingly, as to Count 2, DOC Defendants' motion to dismiss and MPCH Defendants' motion to dismiss are ALLOWED.

### 3. Count 3- Americans with Disabilities Act, 42 U.S.C. §12131

"Title II of the [Americans with Disabilities Act] prohibits discrimination by public entities against persons with disabilities." Cox v. Massachusetts Dep't of Correction, 18 F. Supp. 3d 38, 48–49 (D. Mass. 2014); 42 U.S.C. § 12132. "This prohibition applies to state prisons." Id. (citing Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206 (1998)). "In order to state a claim, plaintiff must allege '(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.'" Id. (quoting Parker v. Universidad de Puerto Rico, 225 F.3d 1, 5 (1st Cir.2000)). An ADA claim is typically brought against the public

13

entity, not individuals. Rather, any claim against individuals must be brought in their official capacities, and only for purposes of injunctive relief. Villery v. Beard, No. 115CV00987DADBAMPC, 2016 WL 8730770, at *2 (E.D. Cal. Apr. 8, 2016); Reaves v. Dep't of Correction, 195 F. Supp. 3d 383, 419 (D. Mass. 2016)(individuals may be enjoined under Title II of ADA in their official capacities). Here, the allegations of the amended complaint do not plead an ADA claim because Jones has not plausibly alleged that he was discriminated against by reason of his disability. See Cryer v. Spencer, No. CIV.A. 11-10654-DJC, 2012 WL 892883, at *5 (D. Mass. Mar. 15, 2012)(dismissing ADA claim where no allegation that discrimination was because of inmate's disability); Lopes v. Beland, No. 11-CV-12063, 2014 WL 1289455, at *12 (D. Mass. Mar. 29, 2014)(dismissing ADA claim where allegation of removing plaintiff from single cell status not alleged to be by reason of inmate's mental disability). Even if a claim for injunctive relief could otherwise be plausibly alleged, Jones was for eight months prior to bringing this action, and currently is, apparently afforded a single cell in compliance with the recommendation of RTU personnel. See Prayer for Relief 5, seeking injunctive relief to "*continue* prescribing and/or *renewing* a single bunk cell order." ECF No. 17 p. 19(emphasis supplied). Jones's concern that he might be subjected to a double bunk cell in the future is entirely speculative.

Accordingly, as to Count 3, DOC Defendants' motion to dismiss and MPCH Defendants' motion to dismiss are ALLOWED.

### 4. Count 4 - Federal Civil Rights Conspiracy Claims, 42 U.S.C. § 1985

A civil rights conspiracy under 42 U.S.C. §1985(3) pertains to conspiracies intended to deprive an individual or class of persons of protected rights based on "'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" Aulson v. Blanchard, 83 F.3d 1, 3 (1st

14

Cir. 1996)(quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)). Jones has not adequately pleaded a section 1985 conspiracy. What Jones is attempting to allege is perhaps a civil rights conspiracy under 28 U.S.C. §1983. "While conspiracies may be actionable under section 1983, it is necessary that there have been, besides the agreement, an actual deprivation of a right secured by the Constitution and laws." Landrigan v. City of Warwick, 628 F.2d 736, 742 (1st Cir. 1980). Paragraphs 40 through 43 describe in conclusory terms a possible scenario in which DOC defendants agreed removed records and agreed to cover up an "undocumented" PREA investigation by Camelo. See Hudson v. MacEachern, 94 F. Supp. 3d 59, 70 (D. Mass. 2015)(dismissing §1983 and §1985 conspiracy claims where complaint only alleged conclusory agreement). The mere possibility of a conspiracy, without more, does not provide an avenue for relief.

Accordingly, as to Count 4, DOC Defendants' motion to dismiss is ALLOWED and MPCH Defendants' motion to dismiss is ALLOWED.

### 5. Count 5 – Intentional Infliction of Emotional Distress

"To make out a claim of intentional infliction of emotional distress, the plaintiffs were required to show (1) that [the defendant] intended, knew, or should have known that his conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe." Galvin v. U.S. Bank, N.A., 852 F.3d 146, 161 (1st Cir. 2017)(quoting Polay v. McMahon, 468 Mass. 379, 385 (2014)). "The standard for making a claim of intentional infliction of emotional distress is very high." Id. (citations and quotations omitted). "There is no liability even if the defendant acted with an intent which is tortious or even criminal, with malice, or with a degree of aggravation which

would entitle the plaintiff to punitive damages for another tort." Id. (citations omitted). "Not even an intent to inflict emotional distress is sufficient." Id. (citation, quotations and punctuation omitted). "Conduct qualifies as extreme and outrageous only if it goes beyond all possible bounds of decency, and is regarded as atrocious, and utterly intolerable in a civilized community." Id. (citation, quotations and punctuation omitted). "A judge may grant a motion to dismiss where the conduct alleged in the complaint does not rise to this level." Id. (citation, quotations and punctuation omitted). Jones, in his opposition to the DOC Defendants' motion, narrows his IIED claim only as to Camelo. He claims that defendant Camelo intended to inflict emotional distress when he initiated false PREA investigations. Jones has failed to allege a plausible IIED claim against Camelo. As to the denial of access to use of a telephone to contact a sexual abuse victim support hotline, the allegation also is insufficient to plead an IIED claim. Accordingly, as to Count 5, DOC Defendants' motion is ALLOWED and MPCH Defendants Motion is ALLOWED.

### 6. Count 6 – Article 26, Massachusetts Declaration of Rights

As DOC Defendants and MPCH Defendants submit, an Article 26 claim under the Massachusetts Declaration of Rights is at least as expansive as Jones' Eighth Amendment claims. Cryer v. Spencer, No. CIV.A. 11-10654-DJC, 2012 WL 892883, at *7 (D. Mass. Mar. 15, 2012). Accordingly, as to Count 6, DOC Defendants' Motion is ALLOWED as to defendants Bower, Steever and Leon, and DENIED as to defendants Mitchell, Devine and Camelo; MPCH Defendants' Motion is ALLOWED.

### 7. Declaratory Relief

While Jones cites "violations" of prison policies at various points in the amended complaint, the only request for declaratory relief comes in the prayer for relief at paragraph 6. There, Jones asks the Court to "declare" that defendants' "actions" violated Jones' right to be free from cruel and unusual punishment under the United States Constitution and Massachusetts Declaration of Rights. There is no separate count for declaratory judgment. Although Jones, apparently in response to briefing by DOC Defendants, might now be inclined to seek declaratory relief, the Court declines to read such a claim into the amended complaint as it is filed.

### 8 Qualified Immunity

DOC Defendants have not sustained their burden that they are entitled to qualified immunity at this stage of the proceedings. DOC Defendants entire argument is that "[t]his is precisely the type [of case] which demands that DOC defendants be given qualified immunity because the plaintiff has not made sufficient allegation of violations by the DOC defendants." ECF No. 63, p. 29. Absent any analysis, DOC Defendants have not met their burden establish qualified immunity at this stage of the proceedings. DOC Defendants are not precluded from raising this defense in a summary judgment motion if appropriate.

### 9. Retaliation

"It is well-settled that 'retaliation against a prisoner's exercise of constitutional rights is actionable' under Section 1983." Morales v. Saba, No. CV 15-10732-RGS, 2016 WL 593493, at *11 (D. Mass. Feb. 12, 2016), *appeal dismissed* (Sept. 9, 2016)(citing Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011)). To state a claim of First Amendment retaliation, Jones must allege "1) he engaged in constitutionally protected conduct, 2) prison officials took adverse action against him,

3) with the intent to retaliate against him for engaging in the constitutionally protected conduct and 4) he would not have suffered the adverse action 'but for' the prison officials' retaliatory motive." Hudson v. MacEachern, 94 F. Supp. 3d 59, 68 (D. Mass. 2015)(quoting Schofield v. Clarke, 769 F.Supp.2d 42, 47 (D.Mass.2011)(dismissing retaliation claim for failure to allege but-for element). The only specific allegation of DOC Defendants retaliation is that Camelo "retaliated" against Jones by placing him in "Awaiting Action" status, Amend. Compl. ¶ 23. This claim is conclusory, and the complaint does not address the "but-for" requirement of pleading such a claim. In fact, the documents referred to in the amended complaint do not support a reasonable inference that the purported action would not have occurred but-for the Camelo's alleged retaliatory motive. Jones also does not address the issue in his opposition to DOC Defendants' motion to dismiss. As to MPCH defendants, Jones argues that Norcliffe "retaliated" against him for calling a crisis call. These allegations are conclusory and not plausibly pleaded. Without more, Jones has not alleged a plausible claim for retaliation.

### IV.   Conclusion and Order

Based on the foregoing, it is hereby Ordered that:

1. As to Defendant Higgins-O'Brien, Counts 1, 2, 3, 4, 5, and 6 are DISMISSED and her Motion to Dismiss for Lack of Service (ECF No. 56) is DENIED as MOOT.

2. DOC Defendants' Motion to Dismiss (ECF No. 60) is ALLOWED in part and DENIED in part as follows:

    a. All Counts are DISMISSED as to defendants Martha Leon.

    b. Counts 2, 3, 4, and 5 are DISMISSED as to defendant Lisa Mitchell.

    c. All Counts are DISMISSED as to defendant Douglas L. Bower.

d. Counts 2, 3, 4, and 5 are <u>DISMISSED</u> as to defendant Michael Devine.

e. Counts 2, 3, 4, and 5 are <u>DISMISSED</u> as to defendant John F. Camelo.

f. All Counts are <u>DISMISSED</u> as to Scott Steever.

3. MPCH Defendants' Motion to Dismiss (ECF No. 50) is <u>ALLOWED</u> as follows:

a. All counts are <u>DISMISSED</u> as to defendant Todd Derbyshire.

b. All counts are <u>DISMISSED</u> as to defendant Neal Norcliffe.

4. Defendants Mitchell, Camelo, and Devine shall file an answer to the amended complaint within 14 days of the entry of this order, which is hereby <u>STAYED</u> pending the appearance of <u>pro bono</u> counsel on behalf of plaintiff Edward Jones, notice from the Court that <u>pro bono</u> counsel will not be appearing on Jones' behalf, or further Order of this Court.

5. The Court <u>sua sponte</u> reconsiders its order on Jones' renewed motion for pro bono counsel pursuant to 28 U.S.C. § 1915(e)(1). ECF No. 19. The motion is <u>CONDITIONALLY ALLOWED</u>. The allowance of a motion for <u>pro bono</u> counsel does not guarantee the appointment of counsel. It means that the Court, through its <u>pro bono</u> coordinators, will contact members of the local bar who have expressed an interest in providing <u>pro bono</u> representation in this Court, notify them that the Court seeks <u>pro bono</u> counsel for Jones, and provide the attorneys with a description of the case. The Court cannot force attorneys to accept appointment as <u>pro bono</u> counsel. The <u>pro bono</u> coordinators will continue this search until otherwise directed by the Court.

6. This action is <u>STAYED</u> pending appearance of <u>pro bono</u> counsel or notification by the Court that it is unable to locate counsel.

**SO ORDERED.**
DATED: February 16, 2018          /s/ Leo T. Sorokin
                                  LEO T. SOROKIN
                                  UNITED STATES DISTRICT JUDGE