UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| EDWARD T. JONES, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil No. 16-11666-LTS |
| COMMONWEALTH OF MASSACHUSETTS, et al., | ) ) ) ) | |
| Defendants. | ) ) ) | |

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (DOC. NOS. 138, 144)

February 3, 2020

SOROKIN, J.

Now before the Court is Plaintiff Edward T. Jones' motion for summary judgment (Doc. No. 138), as well as a cross-motion for summary judgment jointly filed by Defendants Lisa Mitchell, Michael Devine, and John Camelo (Doc. No. 144).[1] For the following reasons, Jones' motion is DENIED and Defendants' cross-motion is ALLOWED.

Jones' remaining claims[2] arise out of incidents that occurred during his period of incarceration in the Residential Treatment Unit of the Old Colony Correction Center ("OCCC"), a medium security prison that houses inmates, like Jones, with "severe and persistent mental

---

[1] The Court considers the parties' motions according to the familiar summary judgment standard. See Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The Court considers each motion separately and draws all inferences against each moving party in turn. See Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997).

[2] The Court previously dismissed several of Jones' claims against these and other defendants. Doc No. 73.

illness[es]." Doc. No. 145 ¶¶ 8–9, 14.[3]  At issue in this suit are Jones' allegations that another inmate sexually harassed Jones at OCCC between May and October 2015, harassment which, according to Jones, led to a physical altercation on October 24, 2015 that resulted in Jones sustaining an injury to his hand.  Doc. No. 145 at 4–5, 13.

According to Jones, the other inmate repeatedly approached him and made unwanted sexual advances which included sexually explicit and disturbing statements.  Id. ¶ 22–31.  Jones testified that in July 2015, he spoke to two different officers about the ongoing harassment; in response, according to Jones, prison officials locked the alleged harasser in his cell while Jones was released back to the general prison population.  Id. ¶ 33–34.  In August 2015, Jones alleges that he again spoke to the Inner Perimeter Security officers at OCCC about the harassment; however, Jones testified that he did not tell the officers what had specifically been said.  Doc. No. 145-6 at 20.  Instead, Jones "just told them that [he] was being sexually harassed."  Id.  It is also undisputed that in August 2015 Jones signed an Inmate Waiver Form which stated that he had "no concerns about returning to the general population."  Doc. No. 145 ¶ 46.

---

[3] The Court recounts the undisputed material facts provided in the Defendants' joint statement. Doc. No. 145.  Jones did not include a statement of undisputed material facts with his motion for summary judgment, nor did he respond to Defendants' statement of undisputed material facts.  In the ordinary course, failure to file such a statement constitutes "grounds for denial of the [summary judgment] motion," and failure to controvert material facts set forth in an opposing party's statement is deemed an admission for purposes of a summary judgment motion.  See Local Rule 56.1; Dale v. H.B. Smith Co., 910 F. Supp. 14, 21 (D. Mass. 1995) (characterizing failure to file a statement of undisputed material facts as "more than a highly technical and nonprejudicial error" (internal quotation marks omitted)).  The Court is mindful that Jones appears in this matter as a pro se plaintiff.  Cf. Haines v. Kerner, 404 U.S. 519, 520 (1972) (describing the "less stringent standards" that pro se filings enjoy).  Nonetheless, after reviewing Jones' affidavit, Doc. No. 138-1, and proposed statement of undisputed material facts (which was filed months after his motion for summary judgment), Doc. No. 166, the Court concludes that Jones' filings do not contradict Defendants' recitation of the undisputed factual record. Accordingly, Jones' motion for leave to re-file a statement of undisputed material facts, Doc. Nos. 167 & 173, as well as Defendants' motion to strike, Doc. No. 169, are DENIED AS MOOT.

In September 2015, Vanessa Martino-Fleming, a mental health professional at OCCC, was approached by Jones and four other inmates "regarding their concerns with [the inmate who Jones claims had been sexually harassing him]." Id. ¶ 46. According to Martino-Fleming's report, the group of inmates, including Jones, were "agitated about [the alleged harasser] returning to the unit after all of the provocative sexual remarks he ha[d] made in the past," and were "coming forward because no one wanted to see [the alleged harasser] get hurt." Doc. No. 145-8. Prison staff, including Defendants Devine and Camelo, were notified of the report. Id. However, Jones testified that he did not report other incidents involving the alleged harasser to Defendants Mitchell and Camelo, Doc. No. 145 ¶ 100, and there is no evidence that he told the Defendants that the repeated sexual harassment was threatening his mental health. Id. ¶ 60.[4]

On October 24, 2015, Jones alleges that the pattern of sexual harassment boiled over into a violent altercation in the OCCC chow hall. Doc. No. 145 ¶ 74. According to Jones, the alleged harasser once again approached him and taunted Jones with sexually explicit and disturbing statements. Id. Jones alleges that he immediately reported the behavior to an officer on duty who told the alleged harasser to leave the chow hall; however, before leaving, the alleged harasser approached Jones and continued to berate him with sexually explicit statements. Id. ¶ 78. Jones testified that the alleged harasser then threatened to stab him with a fork and Jones threatened to "smash [the alleged harasser's] face" in response. Id. ¶ 79. Jones further testified that the alleged harasser proceeded to the tray disposal area of the chow hall; Jones followed him, at which point a fight broke out between the two inmates; according to Jones, in the midst of this fight, the other inmate broke his fork and stabbed Jones with it. Id. ¶ 81–82. After being

---

[4] The Court does not doubt that such repeated verbal harassment could result in acute mental anguish, especially in a prison setting.

3

stabbed, Jones knocked the other inmate to the ground and stomped on him until correctional staff prevented him from further fighting. Id. ¶ 92. Eventually, Jones received three stiches in his hand as a result of the stabbing. Id. ¶ 89.

Jones alleges that Defendants failed to protect him from both the other inmate's repeated sexual harassment, as well as his injuries sustained during the chow hall altercation, a failure which Jones alleges violated the Eighth Amendment to the U.S. Constitution and Article 26 of the Massachusetts Declaration of Rights. Doc. No. 17 at 17, 18–19.[5] "An inmate may sue a correctional facility under the Eighth Amendment for failure to afford adequate protection to inmates from . . . other inmates." Calderon-Ortiz v. LaBoy-Alvarado, 300 F.3d 60, 63–64 (1st Cir. 2002). In such a case, the plaintiff must show (1) that "the conditions of incarceration pose a substantial risk of serious harm;" and (2) that the defendants acted with "deliberate indifference to inmate health or safety." Id. To demonstrate deliberate indifference, "the official[s] must both [have been] aware of facts from which [an] inference could be drawn that a substantial risk of serious harm exists, and [the defendants] must also draw the inference." Id. Indeed, to survive a motion for summary judgment, a plaintiff "must come forward with evidence from which it can be inferred that the defendant-officials were . . . knowingly and unreasonably disregarding an objectively intolerable risk of harm." Farmer v. Brennan, 511 U.S. 825, 846 (1994).

Even drawing all inferences in Jones' favor, he has not met his evidentiary burden. First, the record indicates that Jones provided to the Defendants, at best, incomplete information about the alleged scope of the verbal sexual harassment that preceded the October 2015 chow

---

[5] For purposes of Jones' claims, the protections afforded by Article 26 of the Massachusetts Declaration of Rights are coextensive with the Eighth Amendment of the U.S. Constitution. See Torres v. Comm'r of Correction, 695 N.E.2d 200, 203 (Mass. 1998).

hall incident. There is no indication that the Defendants were on notice that Jones would be physically harmed due to the ongoing harassment; if anything, the only information shared with prison officials raised concerns about the alleged harasser's physical safety. See Doc. No. 145-8 (testimony of Vanessa Martino-Fleming). Moreover, none of the Defendants were at the chow hall on the day of the alleged altercation. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 207 n.3 (1st Cir. 1990) (noting that an "officer cannot be held liable for failing to intercede if he has no realistic opportunity to prevent an attack" (internal quotation marks omitted)). And even if the Defendants had been present, the undisputed evidence demonstrates that Jones instigated the physical altercation that led to his hand injury by following his alleged harasser to the tray disposal area. Doc. No. 145 ¶ 81. Thus, while there is evidence that Jones experienced both verbal sexual abuse and sustained physical injuries, the undisputed facts do not reveal a failure to protect Jones from the "unnecessary and wanton infliction of [physical] pain." Collins v. Graham, 377 F. Supp. 2d 241, 243 (D. Me. 2005) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)), or serious mental anguish. Of course, mere verbal harassment does not state a § 1983 claim. See Duran v. Duval, No. 96–10482–GAO, 1998 WL 765726, at *3 (D. Mass. Oct. 28, 1998).

Jones additionally alleges that Defendant Camelo subjected him to unnecessary Prison Rape Elimination Act ("PREA") investigations that exacerbated his PTSD, which Jones claims also violates the Eighth Amendment and the Massachusetts Declaration of Rights. Doc. No. 145 ¶ 111. Assuming without deciding that emotional and mental harm arising out of unnecessary PREA investigations may give rise to § 1983 and Massachusetts Declaration of Rights liability, cf. Chao v. Ballista, 772 F. Supp. 2d 337, 341 n.2 (D. Mass. 2011) (citing multiple courts that have held that the PREA does not afford litigants a private cause of action), the undisputed facts,

even drawing all inferences in Jones' favor, do not demonstrate that the PREA investigation posed a substantial risk of serious harm, nor do they demonstrate that the Defendants had knowledge of such a risk. This is especially so given that Massachusetts law vests prison officials with discretion to investigate "alleged misconduct within state correctional facilities." Mass. Gen. Laws ch. 124, § 1(i). As Defendants note, correction officers are unable to ascertain the veracity of PREA allegations without first conducting investigations. Doc. No. 148 at 23. Notwithstanding the fact that Jones was ultimately found faultless, Defendants—some of whom, like Defendant Camelo, played no role in the PREA investigation—did not offend the Eighth Amendment or the Massachusetts Declaration of Rights by carefully probing allegations relating to sexual assault. Duran, 1998 WL 765726, at *4 (holding that failure to establish an Eighth Amendment violation similarly doomed an Article 26 claim).

Accordingly, Jones' motion for summary judgment is DENIED and Defendants' cross-motion for summary judgment is ALLOWED. The Clerk shall close the case.

SO ORDERED.

/s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge